WILLIAM WEBB LYON and another *v.* THE COMMERCIAL INSU-
RANCE COMPANY.

The act of 6th March, 1840, directing the mode of composing and drawing juries for Dis-
trict Courts, does not apply to the First Judicial District, in which juries are not
required to be drawn twenty days before each term of the court.

A formal writ of *venire facias* is not required by the laws of this State in any case.
An order of court for drawing and summoning jurors is sufficient.

Since the act of 25th March, 1831, prescribing the qualifications of jurors, does not
require that they should be housekeepers, it may well be doubted whether that qual-
ification, prescribed by art. 506 of the Code of Practice, is now necessary.

One who resides in the parish, and pays a tax and house rent, is a *housekeeper* in the
meaning of art. 506 of the Code of Practice.

The owner, or tenant of a house, *insuring against fire, is not bound to disclose or* com-
municate to the insurers the names or pursuits of sub-tenants living on the premises.
If the insurers wish to guard against the risk from certain pursuits or occupations
of tenants or sub-tenants, they have it in their power to insert in the policy a war-
ranty to that effect, which being a condition precedent, whether material or imma-
terial to the risk, must be complied with, before any action can be maintained on the
policy.

The owner of a house which has been insured, has a right to have it occupied by any
one he pleases, provided the occupations of such persons, or the property placed in
the house, is not of a nature to vitiate the policy under the conditions relative to
hazardous or extra-hazardous risks.

Where a stock of goods in a house are insured, the manner in which the rest of the
building is occupied, cannot affect the policy, unless some warranty has been made
in relation thereto, or there has been a *concealment or misrepresentation of facts*
deemed by the jury material to the risk.

Where, pending the negotiations for a policy, the insurers expressed an objection to
insuring property in the neighborhood of gambling establishments, and the applicant
knew at the time that there was such an establishment within the premises in which
the property was insured, it will be left to the jury to say whether this was a fact,
the concealment or misrepresentation of which was so material to the risk, as to
vitiate the policy. It is of no consequence whether it was considered material to
the risk by the insurers ; it must be considered so by the jury. Where a fact, not
provided for by a warranty on the face of the policy, is concealed, it cannot affect
the right to recover, unless material to the risk, when it avoids the policy on the
ground of fraud or of its having misled the insurers ; and in all such cases the ma-
teriality of the facts concealed or misrepresented must be left to the jury, who are
the proper judges whether the risk has been thereby increased.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
MORPHY, J. The plaintiffs seek to recover $15,000, on a poli-
cy of insurance against fire on their stock in trade, consisting of

clothing, hats, &c., in a store, No. 11, Front Levée street. The insurance was effected for one year from the 9th of December, 1839, and the goods insured were destroyed by fire on the morning of the 27th of March, 1840. The defence set up to this claim is, in substance, that before, at the time of, and after the execution of the policy, the plaintiffs withheld from the Company important information material to the risk. The facts alleged to have been concealed were the names and occupations of the tenants on the premises; and it is averred that the risks of the defendants were greatly increased by such concealment, because the pursuits and occupations of the tenants were of a nature to endanger the safety of the premises. This case was tried by a jury, who rendered their verdict in favor of the plaintiffs. The company appealed, after an ineffectual attempt to obtain a new trial.

*Durant* and *Grymes*, for the plaintiffs.

*Lucius C. Duncan* and *Isaac T. Preston*, for the appellants. There was a concealment of material facts which greatly increased the risk, and which would have prevented the contract had they been known to the defendants. The omission to state material circumstances, though the result of accident or neglect, will vitiate the policy. *A fortiori*, where any suppression or misrepresentation has proceeded from a fraudulent purpose. Ellis on Fire Ins. 23. *Ratcliffe* v. *Shoolbred*, 1 Park, 270, 7th ed. *Carter* v. *Boehm*, 3 Burr. 1905. See 2 Park on Insur. 99, 100, and 2 Peters, 49, 50, as to the facts which the assured is bound to disclose.

MORPHY, J. Our attention was first called to a bill of exceptions, to the opinion of the inferior judge disregarding a challenge to the array, on the ground that no writ of *venire* had issued to the sheriff for the summoning of the jury, and that the jurors had not been drawn twenty days before the commencement of the term for which they were to serve. It appears from the record that, on the 20th of April, 1840, an order was entered on the minutes directing a *venire* to be issued for the drawing of forty-eight jurors to serve during the ensuing month of May, and commanding the sheriff to summon the jurors to be and appear in court on the 11th of May following, at 11 o'clock A. M.; that, in fact, no *venire* was issued to the sheriff who, under this order,

drew a jury, with the clerk of the court, on the 22d of April, 1840, and summoned them to attend ; that a sufficient number of jurors to serve not having been obtained, another drawing was ordered on the 11th of May, which also took place in the presence of the sheriff and clerk, and the additional number of jurors was summoned.   On the 13th of May, when this case came on to be tried, it appearing that no *venire facias* had issued, the judge ordered that a writ of *venire* should be issued tested *nunc pro tunc*, and that the sheriff should forthwith make his return thereon, which was accordingly done.   For the law in support of this challenge to the array, we have been referred to the third section of an act passed the 6th of March, 1840, directing the mode of composing and drawing juries for the District Courts.   B. & C.'s D. p. 527.   This statute does not, in our opinion, apply to the First Judicial District, in which juries continue to be drawn and summoned according to the anterior laws on subject, which do not require that juries should be drawn twenty days before the ensuing term.   This delay was found necessary in the country for the convenience of jurors, living sometimes at a great distance from the seat of justice, and to afford the sheriff the possibility of summoning them a reasonable time before the opening of the court. But even if the statute invoked were applicable, it would not assist the appellants much, as it requires, section 5th, that all objections on account of any defect or informality in the formation, drawing, or summoning of the jury, shall be urged on the first day of the term and not afterwards.   As to the want of a *venire facias*, it appears to us that the order of the court for the drawing and summoning of the jury, of which a certified copy was placed in the hands of the sheriff, was for that officer as good a warrant to summon the jury as a formal writ of *venire*, the issuing of which we find provided for in none of our statutes on the subject.

Another bill of exceptions was taken to the opinion of the judge, overruling an objection made to a juror on the ground that he was not a housekeeper according to article 506 of the Code of Practice.   Among the qualifications necessary to be a juror, as required by the statute of the 25th March, 1831, which is the last enactment on the subject, we do not find that of being a housekeeper.   It may well be doubted whether this qualification is now

necessary ; but even if it were, A. G. Cochran, the juror objected to, declared on his *voire dire* that he resides in the parish, pays a tax as a merchant, and pays also house rent. We think that he might well be considered as a housekeeper in the meaning of the article of the Code, and that the objection made to him was properly overruled.

On the merits, there is no dispute as to the value of the goods destroyed, and no charge of fraud is set up against the plaintiffs. The only defence is, that the assured, who rented the second story of the building they occupied to one Cornell, and knew that he kept in it a gambling establishment, did not communicate the fact to the defendants; and that such concealment was material, as the fact concealed greatly increased the risk, and would have prevented them from insuring had it been made known. The evidence shows that the building in which the goods insured were stored was four stories high, and belonged to one Kohn, and that the plaintiffs had a lease of it for a term of years ; that they never occupied the whole of the premises themselves, but sub-leased from time to time the second and fourth stories ; that the fourth story, which had been let to a militia company some time before, was unoccupied at the time of the fire, but that the second story was then occupied by one Cornell. The testimony leaves little doubt in our minds that this tenant kept a gambling house in the rooms he rented from the plaintiffs, and, moreover, renders it probable, that the plaintiffs knew the fact. Armstrong, the secretary of the Company, testifies that when application was made for insurance, he went with the plaintiffs to take a general view of the premises ; that in a conversation he then had with Lyons, in relation to the gambling establishments in the neighborhood, he stated the objection he should have to taking risks near these establishments. This witness thinks that Lyons replied, that he did not know there were any such there, and that if there were, it would most likely be in the corner store ; and that he then remarked to Lyons that there was an intervening store, that he knew the stores to be well built, and that he would, therefore, take the risk ; that plaintiff at the time gave no intimation that he had under-leased any part of the premises, or that he had the intention to do so ; that had he (the witness) been informed at the time, that there were sub-

tenants on the premises, he would, before taking the risk, have made inquiry to ascertain the occupations and business of the sub-tenants, &c.　　On the trial of the case the counsel for the underwriters requested the court to charge the jury that, if they believed that the plaintiffs were tenants by the year of the store in which the property insured was, they (the plaintiffs) were bound to inform the Company if there were any sub-tenants in the premises, and who they were. The court refused so to charge the jury, but on the contrary instructed them that the plaintiffs were not bound to inform the defendants if there were any sub-tenants, nor what their occupations were, the more especially as the insurance was not on the store, but on a stock of goods in it; and that if the jury believed that, pending the negotiation for the policy, the defendants, through their agents, had objected or expressed an unwillingness to insure property in the neighborhood of gambling establishments, and that the plaintiffs at the time knew that there was one within the premises in which was the property insured, the court would leave it to them to say whether this was a fact, the concealment or misrepresentation of which was so material to the risk, as to vitiate the policy, and that it was of no consequence whether it was material in the opinion of the defendants or their agent, but that it must be considered material to the risk by the jury themselves. The judge further instructed the jury that, where a house was insured, the owner of the house had a right to have it occupied by any person he pleased, provided the occupations of the persons, or the property in it were not of such a nature as to vitiate the policy under the conditions relative to what was considered hazardous or extra-hazardous risks; that where a stock of goods which were in a part of a house or store, were insured, the manner in which the rest of the house was occupied did not affect the policy, unless the insured had made some warranty in relation thereto, or unless there had been a concealment or misrepresentation of facts deemed by the jury material to the risk.　　To this charge of the judge, and to his refusal to instruct the jury as prayed for, the defendants took a bill of exceptions.

The charge of the judge appears to us substantially correct. No case, it is believed, can be referred to, in which it has been held that the owner of a house, or a tenant on a lease for years, is

bound to disclose or communicate to his underwriters the names and pursuits of the tenants, or sub-tenants, living on the premises. If the insurers wish to guard themselves against the risk or dan-. gers supposed to result from certain pursuits or occupations of the tenants, or sub-tenants of houses on which they make insurance, whether it be on the property itself, or on goods in it, they have it in their power to insert in the policy a warranty to that effect. Being considered as a condition precedent, a warranty, whether material or immaterial to the risk, must be complied with, before the assured can maintain an action on the policy ; but where a fact, not provided for by the warranty appearing on the face of a policy, is concealed, it cannot affect the assured's right to recover, unless it be material to the risk, for then it avoids the policy on the ground of fraud, or because the underwriters have been misled. But, in all cases of this kind we take the rule to be well settled, that the materiality of the fact concealed or misrepresented is to be left to the jury. They are the proper judges of the fact whether the risk of fire has been thereby increased. 10 Pickering, 535. 2 Peters, 56. 7 Wen. 77. 6 Ib. 627. 1 Hall, 234, and note. In the present case the jury were called upon to decide whether the plaintiffs, at the time when the insurance was effected, knew that their tenant kept a gambling house in the premises, and whether the danger of fire was thereby greatly enhanced. After hearing all the evidence, they decided these questions of fact in the negative ; and we cannot say that they erred.

*Judgment affirmed.*